**Certiorari Granted, No. 31,738, June 17, 2009**

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2009-NMCA-058**

**Filing Date:      May 12, 2009**

**Docket No. 28,352**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH AND FAMILIES**
**DEPARTMENT,**

**Petitioner-Appellee,**

**v.**

**MARLENE C.,**

 **Respondent-Appellant,**

**and**

**IN THE MATTER OF ESTHER V.,**

 **a Child.**

**APPEAL FROM THE DISTRICT COURT OF McKINLEY COUNTY**
**Louis E. DePauli, Jr., District Judge**

New Mexico Children, Youth and Families Department
Oneida L'Esperance, Acting Chief Children's Court Attorney
Rebecca J. Liggett, Children's Court Attorney
Santa Fe, NM

for Appellee

Jane B. Yohalem
Santa Fe, NM

for Appellant

### OPINION

1

**CASTILLO, Judge.**

**{1}** Mother appeals from an adjudication of neglect. Mother is a member of the Navajo Nation, and the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-1963 (2006), applies to Child. Although the parties to this case agree that ICWA does apply, they disagree about its specific application to issues of preservation and evidentiary requirements. We hold that under the circumstances of this case, ICWA permits Mother to challenge on appeal the sufficiency of the evidence presented at the adjudicatory hearing, and we further hold that the Children, Youth, and Families Department (Department) did not provide sufficient evidence to satisfy the requirements of ICWA. Accordingly, we reverse the adjudication of neglect and remand for further proceedings.

## I.  BACKGROUND

**{2}** When Child was one month old, she and Mother were living as guests with a family as part of a safety contract with the Department. Father was incarcerated. On August 21, 2007, the Department received a referral regarding Mother and Child because the family had asked Mother and Child to leave, thereby rendering them homeless. On the same day, the Department filed an abuse and neglect petition against both parents and filed a motion for an ex parte custody order. The petition acknowledged that Child was Native American and that ICWA applied to the proceedings. The district court granted the motion for an ex parte custody order, and the Department was given legal and physical custody of Child. Mother, through her appointed counsel, filed a response to the petition, and she denied all allegations of abuse and neglect. Notice of the proceedings was sent to the Navajo Nation, as required under ICWA, Section 1912(a).

**{3}** A temporary custody hearing was held on September 12, 2007. At that hearing, Mother stipulated to the Department's continued custody of Child. An adjudicatory hearing was held over two days in October and November 2007. The district court entered an order adjudicating Child to be neglected by both Mother and Father and continued Child's custody with the Department. Mother appeals the order.

## II.  DISCUSSION

**{4}** Mother argues that the district court failed to make certain required findings under Section 1912 of ICWA and that, based on the record developed in this case, we should dismiss the abuse and neglect petition. The Department contends that Mother failed to preserve her ICWA challenges for review in this Court and, in the alternative, that the district court made the requisite findings at the earliest possible opportunity thus meeting the requirements of ICWA. In order to address these arguments, we must review and interpret the provisions of ICWA, and we conduct statutory construction de novo. *See Cherino v. Cherino*, 2008-NMCA-024, ¶ 7, 143 N.M. 452, 176 P.3d 1184 (filed 2007). We first address the preservation issue and then turn to the applicability of ICWA to the present controversy.

### A.  Preservation

2

**{5}** Mother asserts three bases for preservation: (1) that Mother's arguments below sufficiently questioned the district court's findings even though she did not specifically refer to ICWA, (2) that ICWA permits a parent or a tribe to challenge violations of certain provisions of ICWA at any time, and (3) that the district court's failure to abide by ICWA amounted to fundamental error. Because we conclude that ICWA permits Mother to raise this particular challenge on appeal in the circumstances of this case, we need not address the remaining arguments.

**{6}** Section 1914 provides that

> [a]ny Indian child who is the subject of any action for foster care placement or termination of parental rights under [s]tate law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of [S]ections 1911, 1912, and 1913 of this title.

Mother contends that because her substantive argument on appeal concerns an alleged violation of Section 1912, Section 1914 permits her to raise the issue at this time. The Department responds that Section 1914 is designed to address cases in which the district court completely ignores or fails to address ICWA in any way. In the present case, the district court acknowledged that ICWA applied to the proceedings, and the Department argues that Mother was therefore required to make her specific substantive challenge related to Section 1912 to the district court at the adjudicatory hearing. The Department asserts that absent a specific challenge, the district court "had no reason to believe that ICWA was not properly followed."

**{7}** We agree with the Department that under the New Mexico Rules of Appellate Procedure, to "preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked." Rule 12-216(A) NMRA. The parties agree that Mother did not raise at the adjudicatory hearing the issue of the Department's failure to provide evidence as required by ICWA. Mother acknowledges the preservation requirement in Rule 12-216(A), but argues that the language of Section 1914 allows this Court to consider the issue nevertheless. Mother cites *In re S.M.H.*, 103 P.3d 976 (Kan. Ct. App. 2005) for the proposition that a failure of preservation does not automatically prevent an appellate court from evaluating alleged violations of ICWA. In that case, the parent challenged the removal of the children based on state laws but failed to argue to the district court that the stricter provisions of ICWA applied. *Id.* at 981. The Kansas court of appeals nevertheless permitted the parent to raise substantive challenges to the proceedings based on a failure to abide by ICWA because the state and the district court "could have had no doubt that . . . ICWA was applicable." *Id.* at 982.

**{8}** The Department attempts to distinguish *In re S.M.H.* by arguing that in that case, ICWA clearly applied to the proceedings, but the district court failed to follow ICWA requirements. At this stage in our analysis, such a distinction is unpersuasive. We have yet

to determine whether the district court followed ICWA requirements. Instead, we are attempting to determine whether that issue is properly before us. In order to make that determination, we turn to the language of the statute. *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 17, 143 N.M. 84, 173 P.3d 6 ("The plain language of the statute is our primary guide to legislative intent[.]").

**{9}** Section 1914 explicitly permits a parent to challenge—in *any* court of competent jurisdiction—three types of violations: (1) Section 1911, which concerns tribal court jurisdiction; (2) Section 1912, which concerns the proof required to substantiate a termination of parental rights or a foster care placement; or (3) Section 1913, which concerns the validity of a parent's consent to termination or foster care placement. A district court is not able to evaluate whether the requirements of these statutes are being met without first being aware that ICWA is the governing law. Thus, Section 1914 assumes that the applicability of ICWA has already been raised and determined. After that, ICWA places a duty on the district court to apply Sections 1911, 1912, and 1913 regardless of the positions taken by the parties. Accordingly, we conclude that Mother's failure to expressly raise violations of ICWA at the adjudicatory hearing does not prevent us from reviewing the record to determine if the district court fulfilled its obligation to abide by the requirements of ICWA.

## B. ICWA Requirements

**{10}** Mother's argument is focused on Section 1912(d) and (e) of ICWA. Section 1912(d) requires that

> [a]ny party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under [s]tate law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.

Section 1912(e) outlines the proof necessary for these types of proceedings: "clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." For ease of discussion, we shall refer to the Section 1912(d) provision as the "active efforts requirement" and the Section 1912(e) provision as the "serious damage requirement."

**{11}** Our first question relates to the type of proceeding. We thus turn to consider what constitutes a "foster care placement." Section 1903(1)(i) of ICWA defines a "foster care placement" as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." Under the New Mexico Abuse and Neglect Act, NMSA 1978, §§ 32A-4-1 to -34 (1993, as amended through 2005), there are several stages and different kinds of proceedings between the initial ex parte custody order and a

4

termination proceeding. We briefly review those stages in order to determine at what stage in the current abuse and neglect proceeding the district court was required to make ICWA findings.

{12} The Department may take initial custody of a child based on an ex parte custody order entered any time after a petition for abuse and neglect is filed. *See* § 32A-4-16. In that event, a temporary custody hearing is held within ten days of the filing of petition to determine whether the child should remain in the Department's custody pending adjudication. *See* § 32A-4-18(A). The next proceeding is adjudication, at which the district court considers the merits of the abuse and neglect petition. *See* § 32A-4-19; § 32A-4-20(G). Either at the conclusion of the adjudicatory hearing or within thirty days, the district court must make a custody determination—either the court awards custody to the Department, an agency, or an individual or temporary custody ends and the child is returned to a parent. *See* § 32A-4-22(A), (B). If the district court vests custody in the Department, an agency, or an individual who is not the child's parent, this dispositional custody placement remains in force for no more than two years, with the possibility of one-year extensions as the court sees fit. *See* § 32A-4-24(A)-(E).

{13} The Department contends that the district court made both the active efforts and the serious damage determinations at the earliest opportunity—at the ex parte custody order and the temporary custody hearing—and therefore satisfied its obligation under ICWA. In the order granting the Department's motion for ex parte custody, the court stated that "reasonable and active efforts have been made to avoid removal of [C]hild from the home." Because Mother did not contest this finding, the Department argues that the language in the ex parte custody order satisfies the active efforts requirement of ICWA. In addition, the Department points out that Mother stipulated to the following finding in the temporary custody order: "Clear and convincing evidence exists to believe that continued custody of [C]hild by the parent or guardian is likely to result in serious emotional or physical damage to [C]hild." This finding, the Department argues, satisfies ICWA serious damage requirement. According to the Department, because the temporary custody proceedings resulted in a "foster care placement," the requirements under Section 1912(d) and (e) were met.

{14} Mother argues that the district court was required to make ICWA findings at the adjudicatory stage of the abuse and neglect proceedings. Specifically, Mother contends that because the custody determination made after adjudication is a "foster care placement" as contemplated by Section 1912(d) and (e), the district court must make findings regarding both ICWA requirements at the adjudicatory hearing. The arguments are thus about timing: whether the district court must make ICWA findings at the earliest opportunity or whether the district court is obligated to make ICWA findings each time a decision is made regarding a child's placement with anyone other than the Indian parent. Based on the circumstances of the present case, however, we are not obliged to determine whether Section 1912 findings must be made at the adjudication stage of every abuse and neglect proceeding.

{15} At the temporary custody hearing, Mother stipulated to the Department's custody of Child. ICWA includes a provision governing a parent's consent to a foster care placement:

5

> Where any parent or Indian custodian voluntarily consents to a foster care placement or to termination of parental rights, such consent shall not be valid unless executed in writing and recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge's certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian. The court shall also certify that either the parent or Indian custodian fully understood the explanation in English or that it was interpreted into a language that the parent or Indian custodian understood. Any consent given prior to, or within ten days after, birth of the Indian child shall not be valid.

Section 1913(a). Assuming that Mother's consent at the temporary custody hearing was a valid consent under Section 1913(a), the Department was not required at that time to establish the requirements under Section 1912.

**{16}** The record reveals that Mother's consent was limited in time. Indeed, at the temporary custody hearing, Mother's counsel explained to the court Mother's reasons for consenting to temporary custody of Child with the Department: "She is actively looking for a home and seeking ultimately to have [C]hild—of course, all three children—returned to her. So, at this point, she has no place to go. . . . The practicalities of the situation are that somebody's got to take care of [C]hild." Mother's answer to the abuse and neglect petition denied all of the allegations of the petition, including the allegation that it was "contrary to the welfare of [C]hild that she remain in the custody of [her parents]." Additionally, Mother was assured at the temporary custody hearing that she would have an opportunity to dispute the Department's continued custody of Child. Based on Mother's continued resistance to the Department's permanent custody of Child, the Department could not rely on Mother's consent to temporary custody to vitiate ICWA requirements under Section 1912(d) and (e). *See Cherokee Nation v. Nomura*, 2007 OK 40, ¶ 24, 160 P.3d 967, 976 ("[C]ompliance with [ICWA] is required in voluntary and involuntary child custody proceedings." (internal quotation marks omitted)).

**{17}** The record further demonstrates that the Department did not establish the Section 1912 requirements during the initial proceedings. As we have explained, there are two parts to the Section 1912 requirements: active efforts and serious damage. *See* § 1912(d), (e). The record reflects that the district court made findings based on the ex parte order regarding active efforts, but it failed to abide by the mandate under Section 1912(e), directing that the serious danger requirement be established by qualified expert testimony. Because Mother stipulated to temporary custody, the Department did not put on evidence at the temporary custody hearing. The Department secured expert testimony regarding Mother's mental health for the adjudicatory hearing, but acknowledges on appeal that the doctor was not offered "as a 'qualified expert' pursuant to ICWA." Nothing in Section 1912(e) suggests that the Department is relieved of its burden of proof if a parent initially consents to a foster care placement and then later contests the placement at the adjudicatory stage.

**{18}** Under these circumstances, where the Department was never required to prove its case under Section 1912(e) because Mother initially consented to a foster care placement,

we hold that the Department must establish the serious danger requirement pursuant to ICWA before the Department may continue to keep [C]hild in a contested foster care placement. Because we conclude that the Department failed to prove by "clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of [C]hild by the parent or Indian custodian is likely to result in serious emotional or physical damage to [C]hild," we reverse the adjudication of neglect as to Mother because it was not based on sufficient evidence.

## C.      Remand

**{19}**    As we have explained in the past, after an adjudication of abuse and neglect is reversed on appeal, "the district court, on remand, retains jurisdiction to determine whether the parent prevailing on appeal should regain custody of the child." *State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 35, 141 N.M. 692, 160 P.3d 601. While there is a presumption that a fit parent should receive custody, "a court may deny custody if extraordinary circumstances are found to exist." *Id.* ¶ 36. In addition, the Department is not precluded from continuing to seek termination of parental rights if it brings "new or current allegations of abuse, neglect, or abandonment to the district court's attention." *Id.* ¶ 39. Regardless of what the Department chooses to do, the requirements of ICWA must be observed.

## III.     CONCLUSION

**{20}**    We reverse the district court and remand for proceedings in accordance with this opinion.

**{21}    IT IS SO ORDERED.**


_____
**CELIA FOY CASTILLO, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**ROBERT E. ROBLES, Judge**


Topic Index for *State of NM ex rel CYFD v. Marlene C.,* No. 28,352

AE                APPEAL AND ERROR
AE-PA             Preservation of Issues for Appeal

CL                CRIMINAL LAW
CL-CN             Child Abuse and Neglect

7

**EV**           **EVIDENCE**
EV-SS       Substantial or Sufficient Evidence

**IL**            **INDIAN LAW**
IL-IW       Indian Child Welfare Act

**ST**            **STATUTES**
ST-IP       Interpretation